DOWD, J.

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| Andrew Thornton, ) | |
| ) | CASE NO. 4:07 CV 1471 |
| Plaintiff(s), ) | |
| ) | |
| v. ) | MEMORANDUM OPINION |
| ) | |
| McDonald Steel Corporation, et al., ) | |
| ) | |
| Defendant(s). ) | |
| ) | |

Before the Court are cross-motions for summary judgment filed by the parties. (Doc. No. 19, Plaintiff's motion; Doc. No. 17, Defendant McDonald Steel Corporation's motion; Doc. No. 18, Defendant Teamsters Local 377's motion). All the motions are fully briefed. (Doc. Nos. 21, 22, 23, 24, 25[1]). Plaintiff has also separately filed a supporting affidavit. (Doc. No. 20). For the reasons set forth below, the defendants' motions are granted and plaintiff's motion is denied as to Count I (the only federal claim), and all state law counts are dismissed without prejudice, resolving the entire case.

**I. BACKGROUND**

On May 21, 2007, plaintiff filed this action against his former employer McDonald Steel Corporation ("McDonald Steel") and his former union International Brotherhood of Teamsters,

---

[1] Doc. No. 25 was filed two days late. However, the Court has considered it anyway.

(4:07 CV 1471)

Chauffeurs, Warehousemen and Helpers of America Local 377 ("the Union").  On June 15, 2007, at the Court's direction, plaintiff filed an amended complaint ("the complaint") alleging in his first count a hybrid claim under the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 185, in his second count a claim under Ohio Rev. Code § 4123.90, and in his third count an Ohio public policy claim.

The facts underlying the complaint follow.  Plaintiff was hired by McDonald Steel on October 21, 2002 for the position of bander at a pay rate of $9.98 per hour.  He performed general warehouse duties.  His employment was governed by a collective bargaining agreement ("CBA") between McDonald Steel and the Union, of which he was a member.  A copy of the CBA is attached to plaintiff's affidavit.  (Doc. No. 20, Exh. B).

On January 23, 2004,[2] plaintiff, while at work, received third degree burns when his pants caught fire.[3]  He suffered injury to his right knee, thigh, lower leg, and about 10% of his body, and also suffered single episode major depressive disorder and prolonged post traumatic stress

---

[2] The complaint alleges that the date was 2003; however, at the Case Management Conference, plaintiff acknowledged that this was an error.

[3] An independent medical examination report submitted by Stanley J. Palumbo, Ph.D. on June 10, 2004, states:

> . . . The IW [injured worker] was injured on January 34 [sic], 2004 having worked about one year at McDonald Steel Corporation.  He states while turning over with thongs [sic] a glowing hot piece of steel, his right pant leg caught on fire.  He did not realize his leg was on fire until a fellow worker yelled at him and put out the fire by smothering the IW.  The IW was rushed to the burns unit at Akron Children's Hospital, where he stayed for about twelve days.  Following discharge, he reports he was in bed for about three months and was treated by visiting nurses.

(Doc. No. 20-6).

2

(4:07 CV 1471)

disorder ("PTSD"). He was hospitalized for about 12 days and was thereafter referred for mental health treatment. He was medically unable to work due to these injuries. As a result of his injuries, plaintiff filed a workers compensation claim on January 27, 2004. He eventually settled this claim for $108,086.24 on March 16, 2006.

Plaintiff tried unsuccessfully to return to work in August 2004. This lasted about two weeks. Psychological problems relating to his major depressive disorder and PTSD caused him to have to leave work. All of the physicians who have examined plaintiff, including an independent medical examiner, have concluded that his inability to work was directly related to the industrial accident.

On October 23, 2006, plaintiff was finally released to return to work beginning November 20, 2006. He contacted Barry Brooks, McDonald Steel's Human Resources Manager. Brooks told plaintiff that there was no position available and that if he wanted to return he work, he would have to start over without seniority. Plaintiff then contacted a Union representative, Michael Schlatter, who agreed to file a grievance on his behalf.

The Union did file a grievance on or about November 7, 2006 and a grievance meeting was conducted on November 20, 2006. In attendance were plaintiff, Union representatives Schlatter, Joseph Foy, and Chris Colello, as well as Brooks and General Foreman William Clark. Brooks took the position, on McDonald Steel's behalf, that plaintiff had been discharged effective August 11, 2005 under the terms of Art. VIII, Section 4(e) of the CBA and that, in any event, he should have returned to work once his workers compensation settlement was finalized. Colello argued that plaintiff had not been released by his doctor for return to work. When

(4:07 CV 1471)

Colello asked whether any notice had ever been provided to plaintiff that he was discharged, Brooks did not know. The Union took the position that, as long as his absence was the result of his work-related injury, his seniority was not broken and he could not be discharged under Section 4(e). The Union believed that the CBA allowed him unlimited time to return to work.

Plaintiff's grievance was denied on the ground that he was absent from work for twelve consecutive months from August 11, 2004 to August 11, 2005 and was no longer considered an employee after August 11, 2005. Management refused to allow plaintiff to return to work and the Union failed to return plaintiff's telephone calls attempting to initiate arbitration proceedings.

## II. SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate where there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56 . When considering a motion for summary judgment, "the inferences to be drawn from the underlying facts contained in [affidavits, pleadings, depositions, answers to interrogatories, and admissions] must be viewed in the light most favorable to the party opposing the motion." U.S. v. Diebold, Inc., 369 U.S. 654, 655 (1962). However, the adverse party "may not rest upon mere allegation or denials of his pleading, but must set forth specific facts showing that there is a genuine issue for trial." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986).

The Rule requires the nonmoving party who has the burden of proof at trial to oppose a proper summary judgment motion "by any of the kinds of evidentiary material listed in Rule 56(c), except the mere pleadings themselves[.]" Celotex Corp. v. Catrett, 477 U.S. 317, 324

4

(4:07 CV 1471)

(1986). General averments or conclusory allegations of an affidavit do not create specific fact disputes for summary judgment purposes. See Lujan v. National Wildlife Federation, 497 U.S. 871, 888-89 (1990). Nor may a party "create a factual issue by filing an affidavit, after a motion for summary judgment has been made, which contradicts . . . earlier deposition testimony." Reid v. Sears Roebuck & Co., 790 F.2d 453, 460 (6th Cir. 1986) (citing Biechell v. Cedar Point, Inc., 747 F.2d 209, 215 (6th Cir. 1984)); but see Baer v. Chase, 392 F.3d 609, 623-26 (3d Cir. 2004) (noting that a so-called "sham" affidavit need not be disregarded if there is "independent evidence in the record to bolster [the] otherwise questionable affidavit"). Further, "'[t]he mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff.'" Street v. J.C. Bradford & Co., 886 F.2d 1472, 1477 (6th Cir. 1989) (quoting Anderson v. Liberty Lobby, 477 U.S. at 252).

In sum, "[t]he inquiry performed is the threshold inquiry of determining whether there is the need for a trial -- whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." Anderson v. Liberty Lobby, 477 U.S. at 250. Put another way, this Court must determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." Id. at 251-52. See also Wexler v. White's Fine Furniture, Inc., 317 F.3d 564, 578 (6th Cir. 2003) ("[t]he conflicting proof and the inferences that can be drawn therefrom raise genuine issues of material fact that preclude the grant of summary judgment").

5

(4:07 CV 1471)

### III.  DISCUSSION

**A.**     **The Law Relating to Hybrid Claims**

The Sixth Circuit has spoken regarding what a plaintiff must prove in a so-called hybrid claim under the LMRA:

> Hybrid § 301/fair representation actions involve both a claim against the plaintiff's employer under § 301 of the Labor Management Relations Act, 29 U.S.C. § 185, alleging breach of the CBA, and a claim against the union for breach of the duty of fair representation that is implied under the NLRA. *DelCostello v. Int'l Bhd. of Teamsters*, 462 U.S. 151, 164-65, 103 S.Ct. 2281, 76 L.Ed.2d 476 (1983).  The two claims are "inextricably interdependent." *Id*. at 164, 103 S.Ct. 2281.  "[T]o recover against either the Company or the Union, [the plaintiff] must show that the Company breached the Agreement and that the Union breached its duty of fair representation.  Unless [the plaintiff] demonstrates both violations, he cannot succeed against either party." *Bagsby v. Lewis Bros., Inc., of Tenn.*, 820 F.2d 799, 801 (6th Cir.1987) (internal citation omitted).

*Jones v. DaimlerChrysler Corp.*, 212 Fed. Appx. 515, 516 (6th Cir. 2007).

The summary judgment motions address the question of whether the employer breached the CBA.  If McDonald Steel did not violate the CBA, then plaintiff's claim against the Union for breach of the duty of fair representation must automatically fail. *Id*. at 516-17; *Higgins v. International Union, Security, Police, Fire Professionals of America*, 398 F.3d 384, 388 (6th Cir. 2005), citing *Bagsby v. Lewis Bros., Inc. of Tenn.*, 820 F.2d 801, 803 (6th Cir. 1987) (holding that Section 301 hybrid claim failed given meritless breach of collective bargaining agreement claim); *see also Vencl v. International Union of Operating Engineers Local 18*, 137 F.3d 420, 424 (6th Cir. 1998) ("[i]f the union member fails to prove that the employer breached the collective bargaining agreement, he also will recover nothing, because the union member's grievance would have failed regardless of the union's representation").

(4:07 CV 1471)

**B.     Analysis**

All parties rely on one section of the CBA to support their respective positions.  Art. VIII, Section 4(e) provides:

> Section 4:  An employee shall lose his seniority and shall no longer be considered an employee for any of the following reasons:
>
> * * *
>
> (e)     He is out of service with the Company for twelve (12) consecutive months or for a period equal to his seniority if less than twelve (12) months, except that if the employee is out of service because of an injury or illness, the Company has the right to have a physician selected by the Company (at the Company's expense) verify each month that the employee is unavailable for any work offered by the Company, but only after the first six (6) months of such absence from work.

The defendants argue that the first sentence of subsection (e) is clear and unambiguous that when an employee is out of service for any reason for twelve (12) consecutive months, he or she is thereafter no longer an employee.

Plaintiff asserts that there is an exception in subsection (e) that renders it inapplicable to persons like the plaintiff who are out of service for reasons related to illness or injury.

The Court believes Section 4(e) is inartfully written.  The language following "except that" is really no exception at all.  "Except that" might better have been written "and."  Section 4(e) states clearly only one thing: how long an employee can be out of service before employment is terminated and seniority is lost.  Subsection (e) also gives McDonald Steel permission, in a circumstance where the absence is due to illness or injury, to verify the fact of such illness or injury but only beginning in the seventh month of absence.  Contrary to plaintiff's

7

(4:07 CV 1471)

interpretation, the language following "except that" does not change the time limit for loss of employment status and seniority.

Under Section 4(e), it does not matter <u>why</u> an employee is out of service: it could be due to injury or illness; it could also be due to a layoff. Either way, after a set time limit, employment ceases and seniority is lost.[4]

---

[4] The defendants submitted proof of the bargaining history with respect to Section 4(e). *See* Doc. No. 17-3. The document shows the following progression:

(a) 11-2-01 -- McDonald Steel proposed that subsection (e) should be: "He is out of service with the Company for any reason for six (6) consecutive months or for a period equal to his seniority if his seniority is less than six (6) months."

(b) 12-13-01 -- The Union proposed something entirely different which seems not to be relevant because it was not pursued.

(c) 03-18-02 -- The Union proposed the following: "He is out of service with the Company for any reason for eighteen (18) consecutive months provided he has eighteen (18) or more months of seniority, or for twelve (12) consecutive months in the event the employee has less that eighteen (18) months of seniority."

(d) 3-19-02 -- There are handwritten notations on this last iteration, which the Court presumes was the company's counterproposal as follows: "He is out of service with the Company for any reason for six (6) consecutive months provided he has six (6) or more months of seniority, or for twelve (12) consecutive months in the event the employee has less that eighteen (18) months of seniority."

(e) 4-1-02 -- The next version is the Union's: "He is out of service with the Company because of a layoff, personal injury or leave of absence for twelve (12) consecutive months or for a period equal to his seniority if his seniority is less that twelve (12) months; or eighteen (18) consecutive months in the case of a work related injury."

(f) 4-1-02 -- The company countered with: "He is out of service with the Company for any reason for six (6) consecutive months or for a period equal to his seniority if his seniority is less that six (6) months unless the employee has fifteen (15) or more years seniority on his last day worked, at which point this clause is increased to twelve (12)

(continued...)

(4:07 CV 1471)

In plaintiff's case, he tried to return to work in August 2004, after about a seven-month absence. He was unsuccessful and left on August 11, 2004. Therefore, under Section 4(e), plaintiff was required to return to work by August 11, 2005 or suffer loss of employment and

---

⁴(...continued)
consecutive months."

(g) 4-1-02 -- The Union responded by changing the first "six (6) consecutive months" to "twelve (12) consecutive months."

(h) 6-13-02 -- The Company then proposed: "He is out of service for layoff with the Company for twelve (12) consecutive months or for a period equal to his seniority if less than twelve (12) months or he is out of service for a period of six (6) consecutive months due to illness or injury unless the Company's doctor certifies that the employee is unavailable for any work offered by the Company, but then if the employee is out of service with the Company for any reason for twelve (12) consecutive months, the Company may request medical examinations by a doctor of its choice on a monthly basis to determine if the employee is able to perform any available work."

(i) 6-13-02 (proposal #1) -- The Union proposed: "He is out of service with the Company for twelve (12) consecutive months or for a period equal to his seniority if less than twelve (12) months, except that if the employee is out of service because of a work related injury or illness, the Company has the right to have a physician selected mutually by the Company and the employee (at the Company's expense) verify each month that the employee is unavailable for any work offered by the Company, but only after the first six (6) months of such absence from work."

(j) 6-13-02 (proposal #2) -- The Union also proposed the following: "He is out of service with the Company for twelve (12) consecutive months or for a period equal to his seniority if less than twelve (12) months, except that if the employee is out of service because of a work related injury or illness, the Company has the right to have a physician selected by the Company (at the Company's expense) verify each month that the employee is unavailable for work offered by the Company, but only after the first six (6) months of such absence from work." There is a notation on this copy: "6-13-02 Union proposal #2 and Company accepted." This language is not the same as the language in the final CBA; it is not clear why this so-called "accepted" language is not the language in the CBA.

(4:07 CV 1471)

seniority. Plaintiff did not return on that date, admittedly because he had not been cleared to return by his doctor, a fact which is not relevant to the interpretation of Section 4(e).[5]

As the Court construes Section 4(e), McDonald Steel did not breach the CBA by refusing to allow plaintiff to return to work in November 2006, since plaintiff was no longer an employee of McDonald Steel at the time he wanted to return. Because there was no breach of the CBA, plaintiff's claim for breach of the duty of fair representation against the Union cannot stand.

Having resolved the only federal claim (Count I), the Court in its discretion, declines to exercise supplemental jurisdiction over the two state law claims (Counts II and III).

The Court notes that Section 4(e) as written has a harsh result when it is applied to a person who is off service because of a work related injury, who has a workers compensation claim, and who has not yet been cleared to return to his job. Although this Court is dismissing without prejudice the Ohio public policy claim, it may very well be that an Ohio court would find this practice a violation of public policy. It does not appear to this Court to be a very compassionate way of handling an employee whose absence is out of his control and is due to a work related injury. On the other hand, this Court cannot rewrite the CBA.

---

[5] There are provisions in Article IX of the CBA for medical leaves of absence. No party argues that this article applies or in any way alters the meaning of Section 4(e). The Court does not believe it has any applicability because it deals only with a 12-week leave of absence under the Family and Medical Leave Act. Even if one were to attribute a 12-week (i.e., 3-month) leave to plaintiff beginning immediately after August 11, 2004, that would mean he should have returned to service by November 11, 2005. He did not.

(4:07 CV 1471)

## IV. CONCLUSION

For the reasons set forth above, both defendants' motions for summary judgment (Doc. Nos. 17, 18) are granted with respect to Count I and denied without prejudice as to Counts II and III. Plaintiff's motion for summary judgment is denied. Counts II and III will be dismissed without prejudice and plaintiff will be free to pursue them in state court.

IT IS SO ORDERED.


 February 25, 2008         *s/ David D. Dowd, Jr.*
Date                                          David D. Dowd, Jr.
                                                               U.S. District Judge